UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ANNETTE MORALES,

                Plaintiff,

v.

NEW YORK UNIVERSITY,

                Defendant.

**MEMORANDUM AND ORDER**
22-CV-6452 (RPK) (LB)

------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

*Pro se* plaintiff Annette Morales brings this action against New York University ("NYU"), alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*. Defendants have moved to dismiss the complaint, and plaintiff has sought leave to file an amended complaint containing additional allegations. As explained below, neither plaintiff's original complaint nor her proposed amended complaint states a claim under the ADA. Accordingly, defendant's motion to dismiss is granted, and leave to amend is denied.

## BACKGROUND

### I. Factual Allegations

The operative complaint consists of handwritten answers to questions on a form complaint for employment discrimination, along with attached exhibits. *See* Compl. (Dkt. #1).[1] The factual allegations in the complaint are assumed true for the purposes of this order.

Plaintiff has been employed by NYU since 2002. Her current title is Faculty Affairs Coordinator. *Id.* at 12. Beginning in November 2021, plaintiff took disability leave and leave

---

[1] Citations to the complaint follow the ECF pagination. All other citations to documents in the record follow internal pagination, unless otherwise noted.

1

under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, after being diagnosed with thyroid cancer. *Ibid.*

Plaintiff claims that on November 10, 2021, during an appointment with her primary care physician—who plaintiff suspects is friends with Tracy Figueroa, one of her former supervisors at NYU—plaintiff "came to the realization" that NYU was "falsifying [her] medical records in an effort to discredit and delay a metastatic cancer diagnosis, resulting in congestive heart failure symptoms." *Ibid.* The complaint does not specify how plaintiff came to that realization, or whether the appointment occurred before or after her disability and medical leave commenced.

Plaintiff also alleges that during her leave, she experienced difficulties communicating with NYU's human resources department and Lincoln Financial, *ibid.*, which defendant identifies as NYU's third-party employee-benefits administrator, *see* Mem. of Law in Support 2 (Dkt. #14-4). NYU's human resources department "failed to provide [plaintiff] with any information relating to paid leave policies, timelines nor the status of when [her] medical benefits would lapse," Compl. 12, and NYU "[r]estricted [her] to speaking with third party benefits agencies," presumably Lincoln Financial, *id.* at 7. Lincoln Financial, for its part, "made it impossible for [plaintiff] to connect with a case manager" and plaintiff's email inquiries regarding the leave process "only caused [plaintiff] more confusion." *Id.* at 12. On February 23, 2022, plaintiff "received an email"—presumably from Lincoln Financial—"stating [that] if [plaintiff didn't] provide them with medical documentation for an extension"—presumably an extension of leave—"by end of day, then it [would] be determined that [she had] abandoned [her] job." *Ibid.* Plaintiff does not state how or whether she responded to Lincoln Financial's February 23 email.

Although plaintiff claims that NYU would not communicate with her during her leave, the complaint simultaneously alleges that during that period, plaintiff was contacted numerous times

by NYU's Office of Equal Opportunity ("OEO"). In March 2022, an OEO intern contacted plaintiff, inviting her "to participate in the ADA accommodation process specifically for 'job protection'" and requesting plaintiff's "confidential medical documentation." *Id.* at 13. Plaintiff does not state whether or how she responded to that communication. "Several days later," however, plaintiff was admitted to the hospital "due to cardiac concerns." *Ibid.* While in the hospital (and also during "many other medical appointments"), plaintiff "was made to feel unsafe," though plaintiff does not indicate how or by whom. *Ibid.* Two weeks after plaintiff was released from the hospital, "NYU reached out to [plaintiff's] father insisting that [she] complete the ADA accommodation process." *Ibid.* Plaintiff eventually met with the Director of the OEO, who "insist[ed] that [plaintiff] tell her what [plaintiff's] medical diagnos[es] are" and "verbally attacked [her] . . . during [the] ADA accommodation process." *Id.* at 7, 13. To date, plaintiff has not been informed of the status of any ADA accommodation. Plaintiff believes NYU wanted her to participate in the ADA accommodation process "to cover up how they are hurting [her] through medical neglect" and "to cover up retaliation tactics, such as restriction of medical coverage [and] benefits." *Ibid*.

More generally, plaintiff asserts that she suffered "mental [and] physical abuse," that she was "verbally abused in [a] hostile work environment," and that she was "stripped of work responsibilities [and] frozen out," though the complaint does not specify when those actions occurred. *Id.* at 7. Plaintiff states that she was harassed and retaliated against "by medical affiliates at NYU Langone and other medical institutions." *Ibid.* And she contends that "NYU and other medical affiliates are restricting [her] medical and preventive care . . . in retaliation for the employment complaint [she] filed against them for discrimination and hostile workplace abuse

3

since [her] disability was disclosed to [her] department." *Id.* at 12–13.  The complaint does not indicate when plaintiff filed such a complaint.

## II. Procedural History

On July 21, 2022, plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("NYSDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). *Ibid.*  On July 27, 2022, the EEOC issued a right-to-sue notice. *Id.* at 10.

Plaintiff then brought this action in federal court.  The complaint asserts, in pertinent part,[2] that NYU retaliated against plaintiff and discriminated against her in the terms and conditions of her employment based on plaintiff's cancer diagnosis, in violation of the ADA. *Id.* at 3, 6, 7.  Plaintiff seeks damages for medical expenses and other harms. *Id.* at 8.

NYU now moves to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Mot. to Dismiss (Dkt. #14); Fed. R. Civ. P. 12(b)(6).  In addition to opposing the motion to dismiss, *see* Resp. in Opp'n (Dkt. #19), plaintiff moves to amend her complaint to add more factual allegations, *see* Mot. to Amend (Dkt. #21).  A previous order denied the motion for leave to amend as futile to the extent it seeks to add claims against certain additional defendants. *See* 2/13/2024 Order.  To the extent plaintiff seeks to supplement her existing claims against NYU with additional factual allegations, the Court directed NYU to file a response, *ibid.*, and NYU filed an opposition to plaintiff's motion to amend, *see* Ltr. in Resp. (Dkt. #22).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, a complaint

---

[2] Plaintiff's complaint also included additional claims against NYU and claims against various individual defendants, which were dismissed in a previous order. *See Morales v. New York Univ.*, No. 22-CV-6452 (RPK) (LB), 2023 WL 1785546 (E.D.N.Y. Feb. 6, 2023).

4

must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556–57) (quotation marks omitted). In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," *Iqbal*, 556 U.S. at 679. Though the court must accept all facts alleged in the complaint as true, it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

When a plaintiff proceeds *pro se*, her complaint must be "liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## DISCUSSION

Plaintiff's lawsuit is dismissed because plaintiff fails to plausibly allege employment discrimination or retaliation under the ADA. Plaintiff's motion for leave to amend is denied because plaintiff's proposed amended complaint, even construed liberally, would not state a valid claim.

**I.       Discrimination Claim**

Plaintiff claims that NYU discriminated against her in violation of the ADA by subjecting her to "unequal terms and conditions of [her] employment" on the basis of plaintiff's disability or perceived disability of cancer. Compl. 6–7. To establish a prima facie case of disparate treatment discrimination under the ADA, "a plaintiff must show: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job; and (4) she suffered an adverse employment action because of her disability." *Alexander v. DiDomenico*, 324 F. App'x 93, 95 (2d Cir. 2009) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).

Even assuming plaintiff has sufficiently pleaded the first three elements of her prima facie case, plaintiff has failed to "allege facts which plausibly suggest . . . that she suffered an adverse employment action because of her disability." *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (quoting *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)) (quotation marks and alterations omitted). "An adverse employment action in [the disparate-treatment] context is 'a materially adverse change in the terms and conditions of employment.'" *Einsohn v. New York City Dep't of Educ.*, No. 19-CV-2660 (RPK) (RER), 2022 WL 955110, at *6 (E.D.N.Y. Mar. 30, 2022) (quoting *Vale v. Great Neck Water Poll. Control Dist.*, 80 F. Supp. 3d 426, 434 (E.D.N.Y. 2015)).[3] The disability and medical leave that plaintiff took following her cancer diagnosis is not an adverse employment action, as plaintiff has not alleged that NYU caused her to take the leave. Nor do plaintiff's allegations that the NYU OEO invited her to participate in the ADA accommodation process and requested medical documentation suggest any adverse

---

[3] While the Supreme Court is currently considering the precise contours of the "adverse employment action" standard in a related context, *see* Muldrow v. City of St. Louis, 143 S. Ct. 2686 (2023) (granting a petition for writ of certiorari), plaintiff has not plausibly alleged an adverse employment action under even a liberal reading of the term.

6

employment action. The only allegations included in the complaint that could arguably pertain to an adverse action taken by NYU are plaintiff's vague and conclusory statements that she was "stripped of responsibilities," "frozen out," and "verbally abused in [a] hostile work environment." *Id.* at 7. But "[a]llegations" like these "that are so conclusory that they fail to give notice of the basic events and circumstances of which plaintiff complains are insufficient as a matter of law." *Josie v. City of New York*, No. 21-CV-2486 (ARR) (RER), 2023 WL 3765063, at *3 (E.D.N.Y. June 1, 2023) (citing *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978)). Plaintiff's "concern[] that [her] employer wants to force [her] back to work or try to terminate [her] employment," Compl. 13, is even more speculative and insufficient to support a claim of past or ongoing discrimination.

Plaintiff's brief in opposition to the motion to dismiss includes some more specific allegations, but still none that support a discrimination claim under the ADA. Plaintiff alleges that one of her superiors, Rodney Benson, "made negative/deflecting remarks in [her] performance evaluation for AY 2021." Resp. in Opp'n 4. "However, 'a negative performance review, without any showing of a negative ramification, cannot constitute an adverse employment action,'" *Smith v. New York City Dep't of Educ.*, No. 18-CV-8545 (PGG), 2019 WL 6307471, at *8 (S.D.N.Y. Nov. 25, 2019) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019)), and plaintiff does not allege that any adverse consequences resulted from the negative evaluation. Plaintiff's brief also alleges that in January 2021, Benson reallocated her "[l]eadership work responsibilities," such that she "would receive less than a handful of emails per day usually without an action item." Resp. in Opp'n 4. Further, in February and March 2021, plaintiff allegedly had "[h]ostile supervision meetings with superiors Rodney Benson and Tracy Figueroa," during which Benson "verbal[ly] attack[ed]" her character. *Id.* at 3. Even assuming any of those alleged

7

incidents could constitute an adverse action, though, plaintiff does not claim that they occurred *because of* her cancer diagnosis or any other disability.

Therefore, plaintiff fails to plausibly allege that NYU discriminated against her because of a disability in violation of the ADA.

## II.     Retaliation Claim

Plaintiff additionally claims that NYU retaliated against her in violation of the ADA. To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that "(1) [she] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

As with her discrimination claim, even assuming plaintiff has sufficiently pled the other elements of her prima facie case, plaintiff has failed to plausibly allege an adverse employment action. "Adverse employment actions are defined more broadly for purposes of an ADA retaliation claim than a disparate-treatment claim." *Einsohn v. New York City Dep't of Educ.*, No. 19-CV-2660 (RPK) (RER), 2022 WL 955110, at *9 (E.D.N.Y. Mar. 30, 2022). "[A] plaintiff need only show 'that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Ibid.* (quoting *Sherman v. Cnty. of Suffolk*, 71 F. Supp. 3d 332, 353 (E.D.N.Y. 2014)). Still, plaintiff's allegations fall well short of the mark. The complaint states that plaintiff's "medical care has been taken away from [her] in retaliation" for a "complaint [she] filed," Compl 12., but it does not specify when, how, or by whom her medical care was taken away. The complaint also references "retaliation tactics, such as restriction of medical coverage + benefits," *id.* at 7, but again without providing any pertinent details. Those

8

vague and conclusory allegations of retaliation fail to plausibly suggest that NYU took any adverse employment action against plaintiff in retaliation for a protected activity.

Therefore, plaintiff fails to plausibly allege that NYU retaliated against her in violation of the ADA.

**III.     Motion to Amend**

Plaintiff moves for leave to amend her complaint to add more factual allegations to support her ADA claims against NYU.  A *pro se* plaintiff should generally be granted leave to amend a complaint at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted).  However, "leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016).  Where "[t]he new allegations plaintiff wishe[s] to assert . . . are merely conclusory," a district court "ha[s] no reason to permit amendment." *Ibid.*

Here, amendment would be futile because even under a liberal reading, plaintiff's proposed amended complaint fails to plausibly allege an ADA claim against NYU.  The proposed amended complaint alleges generally that plaintiff suffered "employment discrimination, following the disclosure of [her] cancer diagnosis to [her] former superiors" Tracy Figueroa and Professor Rodney Benson in December 2019, Mot. to Am. 3, and it includes a timeline of alleged events.  However, plaintiff still does not make any concrete allegations sufficient to state an employment discrimination or retaliation claim.

First, plaintiff alleges that during a weekly meeting with Figueroa in April 2020, plaintiff complained to Figueroa of experiencing "backhanded bias issues from 'that clique' 'the mean girls.'"  *Id.* at 21.  Specifically, plaintiff raised "concerns of how Professor Natasha Schull was passive aggressively creating administrative problems for [plaintiff]," such as "questioning

[plaintiff's] handling of administrative leadership management of the VaP search." *Id.* at 21. However, plaintiff does not claim that she experienced those issues with coworkers because of her disability. To the contrary, plaintiff states that "[i]t was clear Natasha Schull's microaggressions (bias) towards [her] involved the fact that she'd prefer working directly with Rebecca Brown on the VaP search, despite it being [plaintiff's] primary job responsibility." *Ibid.* The alleged "bias issues" with "mean girls" therefore cannot form the basis of an ADA claim because, by plaintiff's own admission, they were not attributable to plaintiff's cancer diagnosis. *See, e.g.*, *White v. Roosevelt Union Free Sch. Dist. Bd. of Educ.*, No. 15-CV-1035 (JS) (SIL), 2016 WL 4705674, at *9 (E.D.N.Y. Aug. 8, 2016) (concluding "the Complaint fails to casually connect his disability with an adverse employment action, stating only that he had been forced to move classrooms because he would not sign a false statement"), *report and recommendation adopted*, No. 15-CV-1035 (JS) (SIL), 2016 WL 4703661 (E.D.N.Y. Sept. 8, 2016).

Next, echoing some of the allegations included in plaintiff's original complaint and brief in opposition to defendant's motion to dismiss, the proposed amended complaint alleges that in January 2021, Benson "reevaluated [plaintiff's] work responsibilities—essentially, stripped [her] of [her] leadership role ([though] not the title)," and "[plaintiff] was gradually frozen out, with Figueroa's doing." *Id.* at 23. Plaintiff still fails to plausibly allege that any loss in responsibilities occurred *because of* a disability. While the proposed amended complaint alleges that plaintiff experienced discrimination after disclosing her cancer diagnosis to Figueroa and Benson in December 2019, *id.* at 3, it offers no basis for concluding that the disclosure is what caused Figueroa and Benson to reevaluate plaintiff's responsibilities over a year later. If anything, plaintiff's timeline undercuts any potential causal link between the disclosure and her eventual loss of responsibilities: she alleges that in May 2020, six months after she disclosed her diagnosis,

10

"[she] was recognized with a Dean's award from NYU Steinhardt" and received a staff-wide email from Benson praising her work. *Id.* at 4; *accord Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (holding in the First Amendment retaliation context that the fact plaintiff's supervisors gave her "positive evaluations" and "recommended that she be promoted" after plaintiff made protected statements undermined any causal link between the statements and plaintiff's eventual loss of job responsibilities). Nor does plaintiff otherwise "point to any statements or actions by [NYU] employees that would give rise to a plausible inference that the defendant was motivated by discriminatory animus" in diminishing her job responsibilities. *Segal v. City Univ. of New York*, No. 18-CV-4444 (AMD) (LB), 2019 WL 2372979, at *3 (E.D.N.Y. June 4, 2019). Therefore, plaintiff fails to state an ADA claim based on her alleged loss of responsibilities.

Finally, the proposed amended complaint alleges that in July 2021, when the "admin director position" within plaintiff's department became available, plaintiff "was intentionally never considered and overlooked for the position due to the attack on [her] career and character, even though [she] had the most experience doing the job." Mot. to Am. 18–19. Instead, Benson and another Professor "back-handedly and intentionally promoted another administrator who was favored by the 'mean-girls' in the department." *Id.* at 19. To the extent plaintiff seeks to raise a claim for failure to promote under the ADA, she has failed to exhaust her administrative remedies for such a claim. "A plaintiff must file charges with the EEOC before bringing Title VII or ADA claims in federal court," though "claims not raised in an EEOC complaint may be brought in federal court if they are reasonably related to the claim filed with the agency." *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (internal citations, quotation marks, and alterations omitted). In determining whether claims are reasonably related, "the focus should

11

be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving," and "[t]he central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal citations, quotation marks, and alterations omitted). Here, plaintiff's EEOC complaint neither raised a failure-to-promote claim nor alleged facts reasonably related to a failure-to-promote claim. *See, e.g.*, *Franklin v. New York City Transit Auth.-Metro. Trans. Auth.*, No. 18-CV-6436 (JGK), 2021 WL 4710762, at *4 (S.D.N.Y. Oct. 8, 2021) (plaintiff failed to exhaust failure-to-promote claim because "there were no facts in the plaintiff's description of her alleged discrimination that would indicate that she had been denied a promotion"); *Bernard v. Care Design N.Y.*, No. 20-CV-1527 (LJL), 2022 WL 4484556, at *8–9 (S.D.N.Y. Sept. 27, 2022) (termination and hostile work environment claims were not reasonably related to a failure-to-promote claim). Therefore, plaintiff cannot now amend her complaint to raise a claim for failure to promote for the first time in federal court.

In sum, because plaintiff's proposed amended complaint fails to state a claim against NYU, leave to amend is denied as futile.

## CONCLUSION

Defendant's motion to dismiss is granted and the complaint is dismissed for failure to state a claim upon which relief may be granted. The complaint is dismissed with prejudice and plaintiff's motion for leave to amend is denied because a liberal reading of plaintiff's proposed amended complaint does not give any indication that it states a valid claim. The Clerk of Court is respectfully directed to enter judgment and mail a copy of this order to plaintiff. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good

faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

                                            */s/ Rachel Kovner*
                                            RACHEL P. KOVNER
                                            United States District Judge

Dated: March 25, 2024
        Brooklyn, New York